# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL GALLAGHER, JR., <br> as Executor of the ESTATE OF <br> THOMAS A. GALLAGHER, deceased, <br><br>     Plaintiff <br><br> v. <br><br> TRYKO PARTNERS, LLC; TRYKO <br> HOLDINGS, LLC; MARQUIS HEALTH <br> SERVICES, LLC; MARQUIS HEALTH <br> CONSULTING SERVICES, LLC; <br> QUINTO HOLDINGS, LLC; UKR <br> CONSULTING, LLC; PROVIDENCE <br> OPERATOR, LLC d/b/a PROVIDENCE <br> REHABILITATION AND HEALTHCARE <br> CENTER AT MERCY FITZGERALD; <br> NFR 2020 IRRV TR; SK 2013 DELTA <br> TRUST; JOHN DOES 1–25 (individual <br> principals, officers, managing members, and <br> trustees); JANE DOES 1–25 (spouses of <br> individual defendants as transferees). <br><br>     Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | <br><br><br><br><br><br> Civil Action No. <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> **Jury Trial Demanded** |

## COMPLAINT

AND NOW, comes Plaintiff, Michael Gallagher, as Executor of the Estate of Thomas A. Gallagher, deceased (hereinafter the "Estate"), by and through its attorneys, Hardin Thompson, P.C. and Kenneth J. Hardin, II, Esquire, and files this Complaint against Defendants and alleges as follows:

## INTRODUCTION

1.     This action arises from a pattern of fraud and racketeering activity orchestrated by the principals of Tryko Partners, LLC ("Tryko Partners") and Marquis Health Services, LLC

("Marquis Health Services"), conducted through an association-in-fact enterprise comprising more than sixty (60) licensed skilled-nursing facilities operating across the United States, including Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald in Yeadon, Pennsylvania.

2.   Through the operation of the enterprise, Defendants billed the United States of America and respective states for skilled-nursing services that were delivered at care levels so substantially below federal and state requirements as to render the services worthless within the meaning of the False Claims Act, while simultaneously stripping the operating entities of the funds those false claims generated and transferring those funds through inter-affiliate payments, monthly transfers to nominally-charitable recipients with overlapping leadership, and the creation of newly-formed entities and trusts timed to avoid creditor execution to insulate the principals and their families from civil and regulatory liability.

3.   Thomas A. Gallagher ("Mr. Gallagher") was a resident of Providence Rehabilitation and Healthcare Center.

4.   Mr. Gallagher died on October 21, 2020 from injuries sustained Providence Rehabilitation and Healthcare Center.

5.   The Estate filed suit against the Defendants in the Court of Common Pleas of Delaware County at CV-2021-004224 ("Underlying Liability Action"), alleging Professional Negligence, Corporate Negligence, Vicarious Liability, Survival Action and Wrongful Death. See a copy of the Underlying Liability Action Complaint attached as Exhibit "**A**."

6.   An arbitration in the Underlying Liability Action was held before the Honorable Patricia McInerney (Ret.) of JAMS (Ref. No. 5450000008).

7.   The arbitrator entered a final award on April 21, 2022 (the "Award") finding Providence Operator, LLC and its parent Marquis Health Services negligent, corporately

negligent, and a factual cause of harm to Mr. Gallagher, and awarded compensatory damages in the amount of $1,906,482.98, allocated 50% to each defendant.

8.    On December 14, 2022, judgment was entered in the Court of Common Pleas of Delaware County against Marquis Health Services, LLC for its fifty-percent (50%) share of the Award in the amount of $953,241.49.

9.    Providence Operator, LLC has since satisfied its fifty-percent share of the Award in the amount of $953,241.49.

10.    The judgment against Marquis Health Services, LLC remains unpaid, with post-judgment interest accruing at six percent per annum under 41 P.S. § 202 from the date of entry. *See* a copy of the Arbitration Award attached as Exhibit "**B**."

11.    Following entry of the Award, the Estate undertook efforts to collect the unpaid amount owed by Marquis Health Services, LLC, including confirming the Award and causing judgment to be entered against Marquis Health Services, LLC on December 14, 2022 (a certified copy of which was placed on file on or about October 30, 2024); obtaining the post-judgment discovery Orders of the Honorable John J. Whelan dated October 4, 2024; and serving post-judgment interrogatories in aid of execution, including discovery directed to multiple financial institutions on June 18, 2026.

12.    Marquis Health Services, LLC answered thirty-eight (38) interrogatories on or about January 14, 2025 but withheld its document production behind a confidentiality demand that, upon information and belief, remains unresolved.

13.    The above-mentioned efforts have been frustrated by the absence of collectable assets within Marquis Health Services, LLC, which absence is the direct result of the transfers and concealment described herein.

14. The judgment against Marquis Health Services, LLC remains unpaid in the amount of $953,241.49, together with post-judgment interest accruing at six percent (6%) per annum under 41 P.S. § 202 from December 14, 2022, plus collection costs, as of the date of this Complaint.

15. Upon information and belief, the real property at which Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald operates is owned by Mercy Fitzgerald Hospital, from which the enterprise acquired the operating business; the enterprise operates the facility as a tenant. The enterprise's real-estate and investment value is held not at the Providence facility but across its broader portfolio, which upon information and belief includes interests in other skilled-nursing facilities, multifamily real estate, and property tax-lien assets held through affiliated and holding-tier entities. The Estate reserves the right to reach such assets, and to add the entities holding them as defendants, upon confirmation of their identities through discovery.

16. More than four (4) years after the Award, the Defendants have refused to fully satisfy the judgment.

17. During the same period, the Defendants have systematically transferred assets to newly-created affiliates, to ownership trusts inserted into the parent's ownership lattice after the arbitration had commenced, to nominally-charitable third parties whose leadership overlaps with the principals of Tryko Partners and Marquis Health Services, and to the spouses and trusts of the individual principals, with the actual intent to hinder, delay, and defraud the Estate as a judgment creditor.

18. By this action, the Estate seeks treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c); the same under 18 Pa.C.S. § 911(g); compensatory and punitive damages on common-law fraud, civil conspiracy, aiding-and-abetting, and unjust enrichment claims; and voidance of the fraudulent transfers and imposition of constructive trusts under the Pennsylvania

Uniform Voidable Transactions Act, 12 Pa.C.S. §§ 5101 et seq.

## JURISDICTION AND VENUE

19.    This Court has subject-matter jurisdiction over the federal RICO claims under 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331, and over the state-law claims under 28 U.S.C. § 1367.

20.    This Court has personal jurisdiction over each Defendant under 18 U.S.C. § 1965(b) and under Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322, as to those Defendants that conducted business in Pennsylvania through Providence Operator, LLC ("Providence Operator") and Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald.

21.    Venue is proper in this District under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) because (a) Providence Operator conducts its business in this District; (b) Marquis Health Services transacts substantial affairs in this District through the operation of Providence Operator and other Pennsylvania facilities; and (c) a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

22.    Plaintiff Michael Gallagher, Jr., is the duly appointed Executor of the Estate of Thomas A. Gallagher, deceased (Letters granted August 14, 2025, succeeding Robert J. Riggio, Jr.).  Michael Gallagher, Jr. brings this action on behalf of the Estate in its capacity as the judgment creditor of Marquis Health Services, LLC and Providence Operator, LLC.

23.    Defendant Tryko Partners, LLC is a New Jersey limited liability company with its principal place of business in Brick, New Jersey.  Tryko Partners is the upstream private-investment vehicle through which the enterprise's principals hold and direct their interests in the

more than sixty (60) skilled-nursing facilities and ancillary entities described herein.

24.     Defendant Tryko Holdings, LLC ("Tryko Holdings") is a New Jersey or Delaware limited liability company with its principal place of business in Brick, New Jersey.  Tryko Holdings is part of the upstream ownership structure of the enterprise.

25.     Defendant Marquis Health Services, LLC is a New Jersey limited liability company with its principal place of business in Brick, New Jersey (1608 Route 88, Suite 301).  Marquis Health Services is the management and consulting parent for the enterprise's operating facilities. Marquis Health Services has been adjudicated negligent, corporately negligent, and a factual cause of harm to Mr. Gallagher by the Award.

26.     Defendant Marquis Health Consulting Services, LLC ("Marquis Health Consulting Services") is a New Jersey limited liability company formed on October 20, 2020, one day before Mr. Gallagher's death and approximately two (2) months after the incident that gave rise to the Underlying Liability Action.  Marquis Health Consulting Services has functioned as a parallel and substantially identical management entity to Marquis Health Services, and was formed as part of the enterprise's effort to insulate Marquis Health Services' assets from anticipated creditor execution.

27.     Defendant Quinto Holdings, LLC ("Quinto Holdings") is a New Jersey or Delaware limited liability company within the enterprise's holding structure.

28.     Defendant UKR Consulting, LLC ("UKR Consulting") is a New Jersey or Delaware limited liability company within the enterprise's consulting structure.

29.     Defendant Providence Operator, LLC is a Delaware limited liability company doing business in Pennsylvania as Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, located at 600 South Wycombe Avenue, Yeadon, Pennsylvania 19050.  Providence

Operator has been adjudicated negligent, corporately negligent, and a factual cause of harm to Mr. Gallagher by the Award. Providence Operator holds NPI number 1043722960 and its NPPES record identifies Mindee Drillman, CPA, as authorized official, with mailing address at PO Box 1030, Brick, New Jersey 08723.

30.     Defendant NFR 2020 IRRV TR ("NFR Trust") is a trust inserted into the ownership lattice of the enterprise on December 31, 2021, after the arbitration was already pending. The identity of the trustees and beneficiaries is currently within the exclusive knowledge of the enterprise and will be amended into this Complaint upon discovery.

31.     Defendant SK 2013 DELTA TRUST ("SK Trust") is a trust inserted into the ownership lattice of the enterprise on December 31, 2021, after the arbitration was already pending. The identity of the trustees and beneficiaries is currently within the exclusive knowledge of the enterprise and will be amended into this Complaint upon discovery.

32.     Defendants, John Does 1–25 are the individual principals, officers, managing members, and trustees of the entity defendants, whose identities are currently within the exclusive knowledge of the enterprise and will be amended into this Complaint upon discovery. Such defendants include but are not limited to:

    a.  The managing principals of Tryko Partners and Tryko Holdings;

    b.  The managing principals of Marquis Health Services and Marquis Health Consulting Services;

    c.  Mindee Drillman, CPA, the Controller of Marquis Health Services and the authorized official on Providence Operator's NPPES record;

    d.  Yitzchok Rokowsky, the plan administrator of the Marquis Health Services Medical Plan;

e.   Norman Rokeach, Chief Executive Officer of Marquis Health Services

f.   Uri Kahanow, director of acquisitions of Tryko Partners, LLC;

g.   Chad Buchanan, chief investment officer of Tryko Partners, LLC.

h.   The trustees of the NFR Trust and SK Trust.

33.   Defendants, Jane Does 1–25 are the spouses of the individual defendants, joined as nominal/transferee defendants in connection with the voidable-transactions claims pleaded herein, in their capacity as recipients of value transferred from the individual defendants in violation of the Pennsylvania Uniform Voidable Transactions Act.

## FACTUAL ALLEGATIONS

### A. The Marquis–Tryko Enterprise

34.   The Marquis–Tryko Enterprise is an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), comprising the entity defendants identified above, the more than sixty (60) other skilled-nursing-facility licensed operator entities held or managed within the same lattice, the post-2021 trust layer described herein, and the individual principals, officers, managing members, and trustees acting through those entities.

35.   The members of the enterprise are bound together by common ownership, common officers and managing members, common physical offices in Brick, New Jersey, common back-office personnel including Controller Mindee Drillman, CPA, common counsel, and a common business model under which the licensed operator entities deliver federally- and state-reimbursed skilled-nursing services while the management-tier and holding-tier entities extract the resulting revenues.

36.   The enterprise has a common purpose distinct from the ordinary, lawful conduct of

any individual operator or holding entity: to maximize the extraction of revenues from the licensed operator entities to the management-tier, holding-tier, and trust-tier entities and the individual principals, while minimizing the assets available within the operator entities to satisfy creditors and claimants whose claims arise from the operators' conduct.

37.     The enterprise functions as a continuing unit with an ascertainable structure separate and apart from the pattern of racketeering activity, including common ownership and control, shared management and back-office functions, a common cash-management and financial-reporting system, and a recurring practice of inserting ownership layers, trusts, and affiliated entities to receive extracted value.

38.     Each defendant is a person distinct from the enterprise and participated in the conduct of the enterprise's affairs while maintaining an existence separate from it.

39.     The enterprise's practice of extracting value from its operating entities while underfunding resident care has recurred across its portfolio.

40.     At another facility operated within the same Tryko and Marquis structure, Brentwood Rehabilitation and Healthcare Center in Danvers, Massachusetts, the operating entity reported a net operating loss in a year in which the enterprise's affiliated entities were paid more than $1.2 million in management fees and rent, even as state inspectors repeatedly cited the facility for care deficiencies.

41.     This recurring conduct, across multiple facilities and States and over a period exceeding ten years, establishes the relationship and continuity of the enterprise's pattern of racketeering activity.

42.     This conduct reflects a deliberate and repeated business model rather than isolated events.

43.    Through Marquis Health Services, Tryko Partners, LLC is involved with close to 3,000 skilled-nursing beds across the Northeast and Mid-Atlantic and, upon information and belief, holds interests in numerous skilled-nursing facilities, including Kearsley Rehabilitation and Nursing Center in West Philadelphia, acquired in 2011, together with thousands of multifamily residential units and tens of millions of dollars in property tax-lien assets.

44.    Across these facilities the enterprise has followed the same mechanics evident here: operating each facility through a thinly-capitalized operator entity; routing operating revenue to affiliated management, real-estate, and holding entities under common control; and, when a liability matures, forming or substituting parallel entities and inserting ownership layers to place value beyond the reach of the operator's creditors.

45.    The Brentwood facility, acquired in October 2013, exemplifies the same model and was among the most-frequently cited nursing homes in its State during the relevant period.

46.    This recurring practice, across multiple facilities and States and over a period exceeding ten (10) years, establishes the relatedness and continuity of the pattern of racketeering activity alleged herein.

47.    The enterprise operates in interstate commerce.

48.    Its operating facilities are located in multiple states; its management hub is located in New Jersey; its operator entities receive payments from federal and state payors processed across state lines; its banking and ownership-tier entities are formed under the laws of multiple states including New Jersey and Delaware.

### B. The Sub-Standard Care at Providence

49.    Thomas A. Gallagher ("Mr. Gallagher") was admitted as a resident of Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald in or about January, 2020.

50.    Mr. Gallagher's medical history included chronic obstructive pulmonary disease (COPD) and pleural effusion.

51.    Mr. Gallagher's Plan of Care, dated January 28, 2020, addressed "smoking" as an issue that required Providence Operator and Marquis Health Services to keep Mr. Gallagher's smoking materials, including cigarettes and lighting materials in a locked box, and required Mr. Gallagher to wear a smoking apron and required Defendants' staff to light his cigarettes for him

52.    Defendants' staff was also required to properly and safely dispense Mr. Gallagher's cigarette, light the cigarette for Mr. Gallagher, stay with Mr. Gallagher until the cigarette was properly and safely extinguished in order to provide safety and supervision while Mr. Gallagher smoked on the patio.

53.    Mr. Gallagher s Minimum Data Set ( MDS ) dated July 31 2020 indicated that Mr. Gallagher was moderately cognitively impaired.

54.    A Smoking Assessment dated August 11, 2020 indicated that Mr. Gallagher required assistance to and from the smoking patio area and that he was required to wear a smoking apron

55.    On August 21 2020 Mr. Gallagher was transported by Wheelchair to the designated smoking patio by an unidentified Activity Assistant, who was identified as employee "E10" on the Pennsylvania Department of Health and Human Services Survey, dated August 25, 2020.

56.    The unidentified Activity Assistant ("E10") improperly, negligently and recklessly left the smoking patio and left Mr. Gallagher alone and unsupervised while he was smoking.

57.    The unidentified Activity Assistant ("E10") failed to provide Mr. Gallagher his smoking apron and/or a flameless lighter during this relevant time and event.

58.    While alone, unsupervised and without any smoking apron or flameless lighter, Mr.

Gallagher attempted to light a cigarette by himself with a match when he dropped the match onto his clothing and caught on fire.

59.     Mr. Gallagher was unable to safely remove the match or put out/extinguish the match, and his clothes caught fire and he began yelling for help.

60.     Mr. Gallagher, with his clothes on fire and while on fire, re-entered the building yelling for help

61.     Mr. Gallagher was heard screaming and calling for help while he remained on fire and continuing to burn.

62.     Two (2) unidentified Certified Nurse Assistants and a Unit Manager responded to the resident lounge on the first floor, where they found Mr. Gallagher sitting on a small table inside the lounge near the door leading out to the smoking area with flames coming from his clothes and body.

63.     The staff were required to put the flames out using their clothing and a fire extinguisher

64.     The Unit Manager pulled the fire alarm and called 911. The paramedics responded and transported Mr. Gallagher to the hospital burn unit.

65.     Mr. Gallagher sustained burns to his shoulders, arms, chest, neck, hands, face and head.

66.     Mr. Gallagher died on October 21, 2020 from the injuries he sustained at the facility.

67.     The level of care delivered to Mr. Gallagher and to other residents at Providence during the relevant period fell substantially below the standards required under 42 C.F.R. Part 483 and 28 Pa. Code Part IV for federally- and state-reimbursed skilled-nursing services.

68.     The Pennsylvania Department of Health, in independent regulatory survey activity, cited Providence Rehabilitation and Healthcare Center for F-tag 0600 (Free From Abuse and Neglect) and F-tag 0689 (Free of Accident Hazards / Adequate Supervision) at severity level G — actual harm that is not immediate jeopardy. These citations reflect findings independent of and contemporaneous with the conditions that caused Mr. Gallagher's injuries.

69.     The arbitrator's Award ultimately found Providence Operator and Marquis Health Services negligent and corporately negligent, and a factual cause of harm to Mr. Gallagher; and apportioned 50% fault to Providence Operator, 50% fault to Marquis Health Services and 0% fault to Mr. Gallagher.

## C. The False Claims to Federal Payors

70.     During the relevant period, Providence Operator and the other licensed-operator entities within the enterprise submitted, and caused to be submitted, claims for payment to the Medicare program (Title XVIII of the Social Security Act) and to the Medicaid programs administered by Pennsylvania, New Jersey, and other states with federal matching funds (Title XIX), for skilled-nursing services delivered to residents.

71.     Each such claim was, expressly or impliedly, a representation that the services billed were delivered at the level of quality required for federal and state reimbursement under 42 C.F.R. Part 483 and parallel state regulations.

72.     The level of care actually delivered, as evidenced by the Award, the F-0600 and F-0689 citations, and the post-Award forensic investigation, was so substantially below the required level as to render the services billed worthless within the meaning of the False Claims Act, 31 U.S.C. § 3729(a).

73.     Each such claim transmitted by United States mail constitutes mail fraud within the

meaning of 18 U.S.C. § 1341. Each such claim transmitted by electronic means constitutes wire fraud within the meaning of 18 U.S.C. § 1343. Each such claim further constitutes federal health-care fraud within the meaning of 18 U.S.C. § 1347.

### D. The Kickback Pattern

74.    During the relevant period, Marquis Health Services, LLC and other entities within the enterprise made monthly transfers, averaging tens of thousands of dollars per month, to one or more synagogues located in Brick, New Jersey.

75.    The directors and rabbis of one or more such synagogues are the same persons who serve as principals, managing members, or officers of Tryko Partners, Tryko Holdings, Marquis Health Services, and affiliated entities within the enterprise.

76.    To the extent that such transfers were made in exchange for, or to induce, the referral of residents to facilities operated by the enterprise; the placement of residents at such facilities; the influence of resident-selection or placement decisions; or the provision of any item or service for which payment may be made in whole or in part by a federal health-care program, such transfers violate the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and constitute federal health-care offenses within the meaning of 18 U.S.C. § 1347.

77.    To the extent that such transfers were made without reasonably equivalent value at times when one or more of the transferor entities was insolvent or rendered insolvent thereby, such transfers further constitute fraudulent transfers voidable under the Pennsylvania Uniform Voidable Transactions Act, 12 Pa.C.S. § 5104 and § 5105.

### E. The Asset-Insulation Steps

78.    On October 20, 2020, one day before Mr. Gallagher's death, the enterprise caused the formation of Marquis Health Consulting Services, LLC, a substantially-identical parallel entity

to Marquis Health Services.

79.    The timing of this formation, on the eve of foreseeable liability to Mr. Gallagher's Estate, demonstrates the enterprise's actual intent to insulate Marquis Health Services's revenues and asset base from creditor execution. The formation falls within the badges of fraud set forth at 12 Pa.C.S. § 5104(b).

80.    On December 31, 2021, during the pendency of the arbitration that resulted in the Award, the enterprise caused the insertion of one or more ownership trusts, including but not limited to NFR 2020 IRRV TR and SK 2013 DELTA TRUST, into the ownership lattice of the parent and affiliated entities. The timing of these insertions, after the arbitration had commenced and at a moment of foreseeable judgment exposure, falls within the badges of fraud set forth at 12 Pa.C.S. § 5104(b).

81.    From and after the Award (April 21, 2022) and continuing through the date of this Complaint, the enterprise has caused additional transfers among Marquis Health Services, Marquis Health Consulting Services, the trust layer, the individual principals, and the spouses of the individual principals (collectively, the "Insulation Transfers"). The Insulation Transfers have been made with the actual intent to hinder, delay, and defraud the Estate as a judgment creditor of Marquis Health Services and Providence Operator. The full scope of the Insulation Transfers is currently within the exclusive knowledge of the enterprise and will be set forth with specificity upon discovery.

82.    A post-judgment forensic accounting analysis of the enterprise's records concluded, within a reasonable degree of accounting certainty, that Marquis Health Services, LLC diverted funds to affiliated entities and individuals, closed its operating entity in or about 2021 to 2022, and transferred its assets and income to Marquis Health Consulting Services, LLC.

83.    The same records reflect cash distributions of approximately $70,000 in 2021 and $1,092,783 in 2022, and a long-term capital loss of $639,229 recognized in 2022, consistent with the wind-down and extraction of value from Marquis Health Services, LLC described herein.

84.    Upon information and belief, and as reflected in the enterprise's tax records, Marquis Health Services, LLC is owned ninety-nine percent (99%) by Quinto Holdings, LLC and one percent (1%) by Quinta Guardian, LLC, and the enterprise maintains an investment in an entity identified in those records as "Z Core." The ultimate owners of Quinto Holdings, LLC and Quinta Guardian, LLC, and the nature and disposition of the Z Core investment, are presently within the exclusive knowledge of the enterprise and will be set forth upon discovery.

85.    The Estate reserves the right to add Quinta Guardian, LLC, the Z Core entity, and the ultimate owners as defendants upon confirmation of their identities.

### F. The Concealment Steps

86.    In communications to other licensed-operator entities, to ownership-tier entities, and to insurers, the enterprise has concealed the existence, scope, and purpose of the Insulation Transfers, and has structured the transfers to escape ordinary creditor discovery.

87.    In post-judgment discovery, counsel for Marquis Health Services has sought to impose broad confidentiality restrictions on the production of documents responsive to the post-judgment discovery orders of the Honorable John J. Whelan, Court of Common Pleas of Delaware County, Pennsylvania (Orders dated October 4, 2024).

88.    In a letter to Judge Whelan dated March 4, 2025, counsel for Marquis further asserted that the Estate's representative had "previously misused discovery information Marquis provided" and that further use of such information would be "improper and actionable." The assertion is unsupported by any then-existing protective order or legal restriction, and was made

for the purpose of intimidating the Estate from the lawful exercise of its creditor's rights and the public exposure of the enterprise's conduct.

89.    The Defendants have further sought to delay and obstruct the Estate's lawful collection of the judgment.

90.    Upon information and belief, the defendants and those acting on their behalf have repeatedly disclaimed authority to resolve or respond to the matter, including by characterizing counsel as "local counsel" only and directing the Estate to unidentified "main counsel," while withholding court-ordered document production behind an unresolved confidentiality demand and asserting baseless threats against the Estate's lawful use of discovery.

91.    This recurring course of delay and deflection, taken together with the timing and structure of the transfers described above, is consistent with and evidences the defendants' actual intent to hinder, delay, and defraud the Estate as a judgment creditor within the meaning of 12 Pa.C.S. § 5104(a)(1).

## COUNT I
### Violation of Civil RICO Statute
### 18 U.S.C. § 1962(c)
### (Against All Defendants)

92.    The previous paragraphs of this complaint are incorporated by reference as though fully set forth at length therein.

93.    The Marquis–Tryko Enterprise is an enterprise within the meaning of 18 U.S.C. § 1961(4), engaged in and affecting interstate commerce.

94.    Each defendant is a "person" within the meaning of 18 U.S.C. § 1961(3), distinct from the enterprise.

95.    Each defendant has conducted or participated in the conduct of the enterprise's

affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), consisting of multiple acts of mail fraud (§ 1341), wire fraud (§ 1343), laundering of monetary instruments (§ 1956), and engaging in monetary transactions in property derived from specified unlawful activity (§ 1957).

96.    The predicate mailings and wire communications include:

(i) the communications by which claims for payment were submitted to federal and state health-care payors, and

(ii) the communications by which the defendants concealed the existence, scope, and purpose of the Insulation Transfers, structured those transfers to escape ordinary creditor discovery, and made the misrepresentations to the Court of Common Pleas of Delaware County described above, for the purpose and with the effect of defrauding the Estate as a judgment creditor. The specified unlawful activity underlying the money-laundering predicates is the mail and wire fraud described herein.

97.    The predicate acts of mail and wire fraud include, without limitation:

(i) the communications by which the operator entities submitted, or caused to be submitted, claims for payment to the Medicare and Medicaid programs for services that were not provided or were provided in a materially deficient manner during the period of Mr. Gallagher's residency, in or about March 2020 through October 2020, and continuing as to other residents;

(ii) the communications by which the defendants transmitted, recorded, or gave effect to the transfers of value to Marquis Health Consulting Services, LLC on and after its formation on October 20, 2020, to the trust layer inserted on or about December 31, 2021, and to the individual and spousal defendants thereafter;

(iii) the filings and correspondence submitted to JAMS and to the Court of Common Pleas of Delaware County — including the interrogatory answers served on or about January 14, 2025 and the correspondence to the Honorable John J. Whelan dated on or about March 4, 2025 — that misrepresented or concealed the operator entities' financial condition and the transfers described herein; and

(iv) the recurring monthly transfers to nominally-charitable recipients. The Estate will identify each such communication with further specificity following discovery of the enterprise's records, which are presently within the defendants' exclusive control.

98.    The pattern of racketeering activity has continued over a period exceeding ten (10) years, has occurred at more than sixty (60) facilities, and has caused recurring economic injury to the Estate and to the federal and state health-care programs.

99.    As a direct and proximate result of the defendants' conduct, the Estate has suffered injury to its business and property, including but not limited to the unpaid amount of the judgment entered against Marquis Health Services, LLC ($953,241.49), accrued post-judgment interest, and collection costs.

100.    The Estate's injury was directly caused by, and was the intended object of, the defendants' predicate acts.

101.    The defendants designed and operated the enterprise to extract the revenues and assets of the operator entities upstream to the holding, management, trust, and individual defendants, and to leave the operator entities without assets sufficient to satisfy the liabilities foreseeably arising from their operations.

102.    The Estate, as the holder of the Award and a foreseeable judgment creditor of Providence Operator and Marquis Health Services, was a direct and intended target of the asset-stripping and concealment predicate acts, the immediate purpose and effect of which was to defeat collection of the Award.

103.    The Estate's injury — the inability to collect the unpaid Award, does not depend upon, and is not derivative of, any harm suffered by any government payor or other third party; it is the direct result of the predicate acts directed at the Estate as a creditor.

104.    The Defendants' submission of claims for payment for services that were not provided, or were provided in a materially deficient manner, generated revenues that were thereafter extracted and laundered through the transfers described herein.

105.    Those billing and operating practices are pleaded as evidence of the enterprise's common purpose and as the source of the proceeds of the unlawful activity, and not as the Estate's injury.

106.    The Estate's recovery under this Count is limited to its injury to business and property, namely, the unpaid Award and related interest and costs, and the Estate does not seek under this Count any recovery for personal injury.

107.    Under 18 U.S.C. § 1964(c), the Estate is entitled to three (3) times its actual damages, together with reasonable attorneys' fees and costs of suit.

## COUNT II
## Conspiracy to Violate Civil RICO Statute
## 18 U.S.C. § 1962(d)
## (Against All Defendants)

108.    The previous paragraphs of this complaint are incorporated by reference as though fully set forth at length therein.

109.    Each defendant has knowingly agreed with one or more of the other defendants to conduct or to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

110.    Each defendant has taken at least one overt act in furtherance of the conspiracy.

111.    As a direct and proximate result, the Estate has suffered the injuries described above, and is entitled to treble damages, attorneys' fees, and costs under § 1964(c)

<u>**COUNT III**</u>
<u>**Violation of Pennsylvania Corrupt Organizations Act**</u>
<u>**18 Pa.C.S. § 911**</u>
<u>**(Against All Defendants)**</u>

112.    The previous paragraphs of this complaint are incorporated by reference as though fully set forth at length therein.

113.    The conduct alleged constitutes corrupt organization activity within the meaning of 18 Pa.C.S. § 911(b).

114.    Under 18 Pa.C.S. § 911(g), the Estate is entitled to treble damages, costs, and reasonable attorneys' fees.

<u>**COUNT IV**</u>
<u>**Common Law Fraud**</u>
<u>**(Against All Defendants)**</u>

115.    The previous paragraphs of this complaint are incorporated by reference as though fully set forth at length therein.

116.    The defendants knowingly made material misrepresentations to federal and state payors regarding the level of care delivered at facilities operated by the enterprise, with the intent that those payors rely on the misrepresentations and pay claims they would not otherwise have paid; and to the Estate and the court regarding the structure, ownership, and financial condition of the enterprise, with the intent that the Estate and the court forbear from execution proceedings against assets in fact subject to execution.

117.    The payors and the Estate justifiably relied to their detriment.

118.    The Estate is entitled to compensatory and punitive damages.

## COUNT V
## Civil Conspiracy
## (Against All Defendants)

119.    The previous paragraphs of this complaint are incorporated by reference as though fully set forth at length therein.

120.    The defendants conspired with each other and with others to accomplish the unlawful purposes set forth above. In combining and acting as alleged, the defendants acted with the common purpose of injuring the Estate as a judgment creditor and depriving it of its lawful recovery, and their conduct was not justified by any legitimate business interest.

121.    As a direct and proximate result, the Estate has suffered the injuries described above.

## COUNT VI
## Aiding and Abetting
## (Against All Individual Defendants and Trust Defendants)

122.    The previous paragraphs of this complaint are incorporated by reference as though fully set forth at length therein.

123.    Each individual defendant and each trust defendant knew of the underlying tortious conduct of the entity defendants and gave substantial assistance or encouragement to that conduct.

124.    In the alternative, and to the extent Pennsylvania law does not recognize a freestanding claim for aiding and abetting the conduct alleged, the same defendants are liable under a theory of concert of action: they acted in concert pursuant to a common design to accomplish the tortious and fraudulent conduct described above, and each gave substantial assistance and encouragement to the others in its accomplishment, including in the commission of the common-law fraud and the fraudulent transfers pleaded herein.

125.    As a direct and proximate result, the Estate has suffered the injuries described above.

## COUNT VII
### Unjust Enrichment
### (Against All Defendants)

126.    The previous paragraphs of this complaint are incorporated by reference as though fully set forth at length therein.

127.    The defendants have received and retained the benefit of value that, in equity and good conscience, belongs to the Estate as a judgment creditor.

128.    The Estate is entitled to restitution of such benefit.

## COUNT VIII
### Voidable Transactions
### 12 Pa.C.S. §§ 5101 et seq
### (Against All Defendants)

129.    The previous paragraphs of this complaint are incorporated by reference as though fully set forth at length therein.

130.    The transfers of assets, business, personnel, and revenue from Marquis Health Services, LLC to Marquis Health Consulting Services, LLC on and after October 20, 2020, the date of the latter's formation; the transfers effected through the December 31, 2021 trust insertions; the Insulation Transfers; the monthly synagogue transfers; and any transfers from the individual defendants to the Jane Doe spouse defendants, were each made (a) with actual intent to hinder, delay, or defraud the Estate, in violation of 12 Pa.C.S. § 5104(a)(1); or, in the alternative, (b) without receiving reasonably equivalent value at a time when the transferor was insolvent or was rendered insolvent thereby, in violation of 12 Pa.C.S. § 5104(a)(2) and § 5105.

131.    The Estate first discovered, and in the exercise of reasonable diligence could first have discovered, the transfers challenged herein within one (1) year preceding the filing of this Complaint, through the post-judgment discovery described above, the existence, scope, and purpose of those transfers having been concealed by the defendants until that time.

132.    Each challenged transfer is therefore timely under 12 Pa.C.S. § 5109.

133.    To the extent any individual transfer is determined to fall outside the period for avoidance, it is pleaded as evidence of the defendants' actual intent and as a badge of fraud under 12 Pa.C.S. § 5104(b).

134.    As to any challenged transfer that occurred more than four (4) years before the filing of this Complaint, the Estate relies upon the actual-intent theory under 12 Pa.C.S. § 5104(a)(1), as preserved by the discovery rule of 12 Pa.C.S. § 5109(a)(1), and does not assert the constructive-fraud theory of § 5104(a)(2) or § 5105 with respect to such transfer.

135.    The Estate is entitled to avoidance of the transfers and, where appropriate, to imposition of a constructive trust on the transferred property or its substituted assets, and to all further relief available under 12 Pa.C.S. § 5107.

**COUNT IX**
**Alter Ego / Piercing the Corporate Veil**
**(Against the Holding, Management, and Affiliated Entity Defendants and the Individual Defendants)**

136.    The previous paragraphs of this complaint are incorporated by reference as though fully set forth at length therein.

137.    At all relevant times, Providence Operator, LLC and Marquis Health Services, LLC were operated not as independent entities but as instrumentalities of the upstream Tryko and Marquis ownership, holding, and management entities and of the individual principals, who

dominated and controlled their finances, policy, and business practices.

138.    The entity defendants disregarded corporate formalities; commingled funds and assets; shared common ownership, officers, managing members, back-office personnel, counsel, and physical offices; were inadequately capitalized in relation to the liabilities foreseeably arising from their skilled-nursing operations; and used the operator and management entities as conduits to extract revenues to the upstream entities while leaving the operating entities without assets sufficient to satisfy their obligations, including the Award.

139.    Adherence to the fiction of separate corporate existence among the entity defendants would, under these circumstances, sanction fraud, promote injustice, and permit the principals to evade the Award through the asset-insulation steps described above.

140.    Each upstream, holding, management, and affiliated entity defendant, and each individual defendant, is therefore liable as the alter ego of Providence Operator, LLC and Marquis Health Services, LLC for their obligations, including the unpaid amount of the judgment entered against Marquis Health Services, LLC.

**COUNT X**
**Successor Liability (De Facto Merger / Mere Continuation)**
**(Against Marquis Health Consulting Services, LLC)**

141.    The previous paragraphs of this complaint are incorporated by reference as though fully set forth at length therein.

142.    Marquis Health Consulting Services, LLC was formed on October 20, 2020 and thereafter assumed the management and consulting functions, personnel, contracts, customers, and ongoing business previously conducted by Marquis Health Services, LLC.

143.    There is a continuity of ownership, management, personnel, physical location, and

general business operations between Marquis Health Services and Marquis Health Consulting Services; Marquis Health Services ceased or wound down its ordinary management operations following the transfer of its business; and Marquis Health Consulting Services assumed those operations necessary for the uninterrupted continuation of the business.

144.   Marquis Health Consulting Services, LLC is a mere continuation of, and the de facto successor to, Marquis Health Services, LLC, and the transfer of the business was undertaken for the purpose of escaping liability for the Award.

145.   Marquis Health Consulting Services, LLC is therefore liable for the obligations of Marquis Health Services, LLC, including the unpaid amount of the judgment entered against Marquis Health Services, LLC.

**PRAYER FOR RELIE**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of the Estate and against the defendants, jointly and severally, providing the following relief:

A. On Counts I and II, an award of three times the Estate's actual damages, together with reasonable attorneys' fees and costs, under 18 U.S.C. § 1964(c);

B. On Count III, an award of three times the Estate's actual damages, together with reasonable attorneys' fees and costs, under 18 Pa.C.S. § 911(g);

C. On Counts IV, V, VI, and VII, compensatory damages in an amount to be determined at trial, punitive damages, and pre- and post-judgment interest;

D. On Count VIII, avoidance of the fraudulent transfers identified herein and to be identified through discovery; imposition of constructive trusts on the property transferred and on substituted assets in the hands of the transferee defendants,

including the Jane Doe spouse defendants and the trust defendants; injunction against further fraudulent transfers; and appointment of a receiver as appropriate, such injunctive and receivership relief being sought in connection with the equitable voidable-transactions claims under 12 Pa.C.S. § 5107;

E.  On Counts IX and X, judgment declaring the alter-ego and successor defendants jointly and severally liable for the obligations of Providence Operator, LLC and Marquis Health Services, LLC, including the unpaid amount of the judgment entered against Marquis Health Services, LLC, together with pre- and post-judgment interest and costs;

F.  Pre- and post-judgment interest as provided by law;

G.  Costs of suit and reasonable attorneys' fees as provided by law; and

H.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Respectfully Submitted,

HARDIN THOMPSON, P.C.

/s/ Kenneth J. Hardin II
Kenneth J. Hardin II, Esquire PA ID 58303
The Frick Building
437 Grant Street, Suite 620
Pittsburgh, Pennsylvania 15219
kenhardin@hardinlawpc.net
Ph - (412) 315-7195
Fax- (412) 315-7386

Dated: August 3, 2026

# EXHIBIT A

**DeNITTIS OSEFCHEN PRINCE, P.C.**
By: Charles J. Galvin, Esquire
Identification Number: 80407
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, New Jersey 08053                           Attorney for Plaintiff
 (856) 797-9951
Email: cgalvin@denittislaw.com

| | |
|---|---|
| ROBERT J. RIGGIO, JR., Executor of the Estate of THOMAS A. GALLAGHER, Deceased<br>4 Edwin Miller Drive<br>Glenn Mills, PA 19342 | COURT OF COMMON PLEAS DELAWARE COUNTY |
| Plaintiff | NO: |
| v. | |
| PROVIDENCE OPERATOR, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center<br>600 South Wycombe Avenue<br>Yeadon, PA 19050 | |
| and | |
| MARQUIS HEALTH CONSULTING SERVICES, LLC<br>1608 Route 88, Suite 301<br>Brick, NJ 08724 | |
| and | |
| MARQUIS HEALTH SERVICES, LLC<br>1608 Route 88, Suite 301<br>Brick, NJ 08724 | |
| and | |
| TROYKO PARTNERS, LLC<br>575 Route 70, 2nd Floor<br>Brick, NJ 08723 | |
| and | |
| TROYKO HOLDINGS, LLC<br>575 Route 70, 2nd Floor<br>Brick, NJ 08723 | |
| and | |
| QUINTO HOLDINGS, LLC<br>575 Route 70, 2nd Floor<br>Brick, NJ 08723 | |
| and | |

UKR CONSULTING, LLC        :
75 Shady Lane Drive           :
Lakewood, NJ 08701          :
                   Defendants      :

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYERS REFERENCE SERVICE
FRONT AND LEMON STREETS
MEDIA, PA 19063
610-566-6625

**DeNITTIS OSEFCHEN PRINCE, P.C.**
By: Charles J. Galvin, Esquire
Identification Number: 80407
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(856) 797-9951
Email: cgalvin@denittislaw.com

Attorney for Plaintiff

| | |
|---|---|
| ROBERT J. RIGGIO, JR., Executor of the Estate of THOMAS A. GALLAGHER, Deceased<br>4 Edwin Miller Drive<br>Glen Mills, PA 19342 | COURT OF COMMON PLEAS<br>DELAWARE COUNTY |
| Plaintiff | NO: |
| v. | |
| PROVIDENCE OPERATOR, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center<br>600 South Wycombe Avenue<br>Yeadon, PA 19050 | |
| and | |
| MARQUIS HEALTH CONSULTING SERVICES, LLC<br>1608 Route 88, Suite 301<br>Brick, NJ 08724 | |
| and | |
| MARQUIS HEALTH SERVICES, LLC<br>1608 Route 88, Suite 301<br>Brick, NJ 08724 | |
| and | |
| TROYKO PARTNERS, LLC<br>575 Route 70, 2nd Floor<br>Brick, NJ 08723 | |
| and | |
| TROYKO HOLDINGS, LLC<br>575 Route 70, 2nd Floor<br>Brick, NJ 08723 | |
| and | |
| QUINTO HOLDINGS, LLC<br>575 Route 70, 2nd Floor<br>Brick, NJ 08723 | |
| and | |

UKR CONSULTING, LLC          :
75 Shady Lane Drive             :
Lakewood, NJ 08701            :
                   Defendants      :

## CIVIL-ACTION COMPLAINT

Plaintiff, ROBERT J. RIGGIO, JR., Executor of the Estate of THOMAS A. GALLAGHER, deceased, by and through his counsel, DENITTIS OSEFCHEN PRINCE, P.C., files the within Complaint in Civil-Action and states as follows:

## PARTIES

### PLAINTIFF

1. Thomas A. Gallagher, deceased (hereinafter also referred to as "Mr. Gallagher" and/or "Decedent" and/or "Resident"), was an adult individual and a resident of a nursing home facility known as Providence Rehabilitation and Healthcare Center (hereinafter also referred to as either "Defendant" and/or "Facility" and/or "Providence Rehab") which is located at 600 South Wycombe Avenue, Yeadon, PA 19050.

2. On January 27, 2020, Mr. Gallagher was admitted to Providence Rehabilitation and Healthcare Center for his care, protection, safety and assistance with his activities of daily living (ADL's).

3. Mr. Gallagher was a resident of Providence Rehabilitation and Healthcare Center until August 21, 2020.

4. On August 21, 2020, Mr. Gallagher suffered avoidable and preventable burns when he was left alone and unsupervised, without a smoking apron or flameless lighter, and his body caught fire while he attempted to light and/or smoke a cigarette, as a result of the Defendants' failure to provide the required and necessary supervision and/or smoking apron and/or flameless lighter and/or safety interventions.

5. Defendants failed to provide the necessary and required equipment and supervision on the nursing home's patio during Mr. Gallagher's cigarette break which resulted in the avoidable and preventable fire causing painful and terminal burns and injuries.

6. Mr. Gallagher was transferred to Crozer Chester Medical Center where he was treated for his burns and where he remained until he died.

7. On October 21, 2020, Mr. Gallagher died as a result of Defendants' negligence.

8. The Certificate of Death states Mr. Gallagher's "immediate cause" of death was complications of thermal body burns.

9. The Certificate of Death states the "manner of death" was "accident."

10. The Certificate of Death states the "place of injury" was "outside nursing home."

11. The Certificate of Death states the "location of injury" was "500 [sic] S. Wycombe Avenue, Yeadon, PA 19050."

12. At the time of his death, Mr. Gallagher was eighty (80) years old.

13. Plaintiff, Robert J. Riggio, Jr. (hereinafter also referred to as "Plaintiff"), is an adult individual and citizen of the Commonwealth of Pennsylvania with an address of 4 Edwin Miller Drive, Glen Mills, PA.

14. On December 30, 2020, Plaintiff, Robert J. Riggio, Jr., was granted Letters Testamentary and appointed the Executor of the Estate of Thomas A. Gallagher, deceased, by the Register of Wills of Delaware County, Pennsylvania.

## DEFENDANTS

### Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center

15. Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, is a domestic for-profit company that regularly conducts business in the Commonwealth of Pennsylvania at a nursing home facility doing business as and known to the public of Delaware County as Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald which is located at 600 South Wycombe Avenue, Yeadon, PA 19050, and which has a corporate headquarters located at 525 Route 70, 2nd Floor, Brick, NJ 08723.

16. Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, is engaged in the business of owning and/or operating and/or managing nursing homes, including Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, which is a nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, PA, and, was at all relevant times, duly licensed to operate same in the Commonwealth of Pennsylvania.

17. Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, was the owner, employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, and/or partners, and those persons granted privileges at Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, a nursing home facility,

out to the public as competent and skillful long-term healthcare providers and practitioners of medicine.

18.     Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, is directly/personally liable and indirectly/vicariously liable for the acts and omissions of themselves, their agents, employees, servants and/or partners and all other Defendants, all of whom played a role in the care of Mr. Gallagher.

19.     Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, and its agents, servants, contractors, subcontractors and/or employees are/were licensed professionals/professional corporations and/or businesses and the Plaintiff asserts professional liability claims against this Defendant, its agents, servants, contractors, subcontractors and/or employees with regard to medical care which took place in Delaware County, PA.

## Marquis Health Consulting Services, LLC

20.     Defendant, Marquis Health Consulting Services, LLC, is a foreign for-profit company that regularly conducts business in the Commonwealth of Pennsylvania at a nursing home facility doing business as and known to the public of Delaware County as Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is located at 600 South Wycombe Avenue, Yeadon, PA 19050, and which has a corporate headquarters located at 1608 Route 88, Suite 301, Brick, NJ 08724.

21.     Defendant, Marquis Health Consulting Services, LLC, is engaged in the business of owning and/or operating and/or managing nursing homes, including Defendant, Providence

Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is a nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, PA, and, was at all relevant times, duly licensed to operate same in the Commonwealth of Pennsylvania.

22.     Defendant, Marquis Health Consulting Services, LLC, was the owner, employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, and/or partners, and those persons granted privileges at Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, a nursing home facility, out to the public as competent and skillful long-term healthcare providers and practitioners of medicine.

23.     Defendant, Marquis Health Consulting Services, LLC, is directly/personally liable and indirectly/vicariously liable for the acts and omissions of themselves, their agents, employees, servants and/or partners and all other Defendants, all of whom played a role in the care of Mr. Gallagher.

24.     Defendant, Marquis Health Consulting Services, LLC, and its agents, servants, contractors, subcontractors and/or employees are/were licensed professionals/professional corporations and/or businesses and the Plaintiff asserts professional liability claims against this Defendant, its agents, servants, contractors, subcontractors and/or employees with regard to medical care which took place in Delaware County, PA.

## Marquis Health Services, LLC

25.     Defendant, Marquis Health Services, LLC, is a foreign for-profit company that regularly conducts business in the Commonwealth of Pennsylvania at a nursing home facility

doing business as and known to the public of Delaware County as Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is located at 600 South Wycombe Avenue, Yeadon, PA 19050, and which has a corporate headquarters located at 1608 Route 88, Suite 301, Brick, NJ 08724.

26.     Defendant, Marquis Health Services, LLC, is engaged in the business of owning and/or operating and/or managing nursing homes, including Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is a nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, PA, and, was at all relevant times, duly licensed to operate same in the Commonwealth of Pennsylvania.

27.     Defendant, Marquis Health Services, LLC, was the owner, employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, and/or partners, and those persons granted privileges at Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, a nursing home facility, out to the public as competent and skillful long-term healthcare providers and practitioners of medicine.

28.     Defendant, Marquis Health Services, LLC, is directly/personally liable and indirectly/vicariously liable for the acts and omissions of themselves, their agents, employees, servants and/or partners and all other Defendants, all of whom played a role in the care of Mr. Gallagher.

29. Defendant, Marquis Health Services, LLC, and its agents, servants, contractors, subcontractors and/or employees are/were licensed professionals/professional corporations and/or businesses and the Plaintiff asserts professional liability claims against this Defendant, its agents, servants, contractors, subcontractors and/or employees with regard to medical care which took place in Delaware County, PA.

## Tryko Partners, LLC

30. Defendant, Tryko Partners, LLC, is a foreign for-profit company that regularly conducts business in the Commonwealth of Pennsylvania at a nursing home facility doing business as and known to the public of Delaware County as Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is located at 600 South Wycombe Avenue, Yeadon, PA 19050, and which has a corporate headquarters located at 525 Route 70, 2nd Floor, Brick, NJ 08723.

31. Defendant, Tryko Partners, LLC, is engaged in the business of owning and/or operating and/or managing nursing homes, including Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is a nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, PA, and, was at all relevant times, duly licensed to operate same in the Commonwealth of Pennsylvania.

32. Defendant, Tryko Partners, LLC, was the owner, employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, and/or partners, and those persons granted privileges at Defendant, Providence Operator, LLC,

d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, a nursing home facility, out to the public as competent and skillful long-term healthcare providers and practitioners of medicine.

33.   Defendant, Tryko Partners, LLC, is directly/personally liable and indirectly/vicariously liable for the acts and omissions of themselves, their agents, employees, servants and/or partners and all other Defendants, all of whom played a role in the care of Mr. Gallagher.

34.   Defendant, Tryko Partners, LLC, and its agents, servants, contractors, subcontractors and/or employees are/were licensed professionals/professional corporations and/or businesses and the Plaintiff asserts professional liability claims against this Defendant, its agents, servants, contractors, subcontractors and/or employees with regard to medical care which took place in Delaware County, PA.

### Tryko Holdings, LLC

35.   Defendant, Tryko Holdings, LLC, is a foreign for-profit company that regularly conducts business in the Commonwealth of Pennsylvania at a nursing home facility doing business as and known to the public of Delaware County as Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is located at 600 South Wycombe Avenue, Yeadon, PA 19050, and which has a corporate headquarters located at 525 Route 70, 2nd Floor, Brick, NJ 08723.

36.   Defendant, Tryko Holdings, LLC, is engaged in the business of owning and/or operating and/or managing nursing homes, including Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence

Rehabilitation and Healthcare Center, which is a nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, PA, and, was at all relevant times, duly licensed to operate same in the Commonwealth of Pennsylvania.

37. Defendant, Tryko Holdings, LLC, was the owner, employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, and/or partners, and those persons granted privileges at Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, a nursing home facility, out to the public as competent and skillful long-term healthcare providers and practitioners of medicine.

38. Defendant, Tryko Holdings, LLC, is directly/personally liable and indirectly/vicariously liable for the acts and omissions of themselves, their agents, employees, servants and/or partners and all other Defendants, all of whom played a role in the care of Mr. Gallagher.

39. Defendant, Tryko Holdings, LLC, and its agents, servants, contractors, subcontractors and/or employees are/were licensed professionals/professional corporations and/or businesses and the Plaintiff asserts professional liability claims against this Defendant, its agents, servants, contractors, subcontractors and/or employees with regard to medical care which took place in Delaware County, PA.

## Quinto Holdings, LLC

40. Defendant, Quinto Holdings, LLC, is a foreign for-profit company that regularly conducts business in the Commonwealth of Pennsylvania at a nursing home facility doing business as and known to the public of Delaware County as Defendant, Providence Operator, LLC, d/b/a

Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is located at 600 South Wycombe Avenue, Yeadon, PA 19050, and which has a corporate headquarters located at 525 Route 70, 2nd Floor, Brick, NJ 08723.

41.    Defendant, Quinto Holdings, LLC, is engaged in the business of owning and/or operating and/or managing nursing homes, including Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is a nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, PA, and, was at all relevant times, duly licensed to operate same in the Commonwealth of Pennsylvania.

42.    Defendant, Quinto Holdings, LLC, was the owner, employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, and/or partners, and those persons granted privileges at Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, a nursing home facility, out to the public as competent and skillful long-term healthcare providers and practitioners of medicine.

43.    Defendant, Quinto Holdings, LLC, is directly/personally liable and indirectly/vicariously liable for the acts and omissions of themselves, their agents, employees, servants and/or partners and all other Defendants, all of whom played a role in the care of Mr. Gallagher.

44.    Defendant, Quinto Holdings, LLC, and its agents, servants, contractors, subcontractors and/or employees are/were licensed professionals/professional corporations and/or

businesses and the Plaintiff asserts professional liability claims against this Defendant, its agents, servants, contractors, subcontractors and/or employees with regard to medical care which took place in Delaware County, PA.

### UKR Consulting, LLC

45.     Defendant, UKR Consulting, LLC, is a foreign for-profit company that regularly conducts business in the Commonwealth of Pennsylvania at a nursing home facility doing business as and known to the public of Delaware County as Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is located at 600 South Wycombe Avenue, Yeadon, PA 19050, and which has a corporate headquarters located at 525 Route 70, 2nd Floor, Brick, NJ 08723.

46.     Defendant, UKR Consulting, LLC, is engaged in the business of owning and/or operating and/or managing nursing homes, including Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence Rehabilitation and Healthcare Center, which is a nursing home facility providing healthcare, medical services, nursing care and assisted living/personal care to the public of Delaware County, PA, and, was at all relevant times, duly licensed to operate same in the Commonwealth of Pennsylvania.

47.     Defendant, UKR Consulting, LLC, was the owner, employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, and/or partners, and those persons granted privileges at Defendant, Providence Operator, LLC, d/b/a Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald, a/k/a Providence

Rehabilitation and Healthcare Center, a nursing home facility, out to the public as competent and skillful long-term healthcare providers and practitioners of medicine.

48. Defendant, UKR Consulting, LLC, is directly/personally liable and indirectly/vicariously liable for the acts and omissions of themselves, their agents, employees, servants and/or partners and all other Defendants, all of whom played a role in the care of Mr. Gallagher.

49. Defendant, UKR Consulting, LLC, and its agents, servants, contractors, subcontractors and/or employees are/were licensed professionals/professional corporations and/or businesses and the Plaintiff asserts professional liability claims against this Defendant, its agents, servants, contractors, subcontractors and/or employees with regard to medical care which took place in Delaware County, PA.

## ALL DEFENDANTS

50. Upon information and belief, all Defendants collectively owned, operated and/or managed the Facility, and are collectively engaged in the business of providing medical and nursing care and assisted living/personal care services to the general public, akin to a total health care provider and/or hospital.

51. All Defendants had a mutual understanding of the common purpose of operating the Facility.

52. All Defendants each had a voice in the direction and control of the means used to carry out the common purpose of the Facility.

53. Each Defendant acted as the agent of the other Defendants for the purpose of operating the Facility.

54. Defendants were not and did not function as independent companies.

## JURISDICTION AND VENUE

55.    Jurisdiction and venue are proper in this Honorable Court insofar as Defendants regularly conducts business in Delaware County, Pennsylvania, and/or the cause of action arose therein.  See Pa.R.C.P. Nos. 1006 and 2179.

## MR. GALLAGHER'S INJURIES AND DEATH

56.    Plaintiff incorporates the prior paragraphs herein.

57.    Mr. Gallagher was a long-term, full-time resident of Defendants' Facility, Providence Rehabilitation and Healthcare Center at Mercy Fitzgerald (hereinafter also referred to as either "Defendant" and/or "Facility" and/or "Providence Rehab").

58.    On January 27, 2020, Mr. Gallagher was admitted to Providence Rehab.

59.    Mr. Gallagher's medical history included chronic pulmonary obstructive disease ("COPD) and plural effusion.

60.    Mr. Gallagher's Plan of Care, dated January 28, 2020, addressed "smoking" as an issue that required Defendants to keep Mr. Gallagher's smoking materials, including cigarettes and lighting materials in a locked box, and required Mr. Gallagher to wear a smoking apron and required  Defendants' staff to light his cigarettes for him.

61.    Defendants' staff was also required to properly and safely dispense Mr. Gallagher's cigarette, light the cigarette for Mr. Gallagher, stay with Mr. Gallagher until the cigarette was properly and safely extinguished in order to provide safety and supervision while Mr. Gallagher smoked on the patio.

62.    Mr. Gallagher's Minimum Data Set ("MDS"), dated July 31, 2020, indicated that Mr. Gallagher was moderately cognitively impaired.

63.   A Smoking Assessment, dated August 11, 2020, indicated that Mr. Gallagher required assistance to and from the smoking patio area and that he was required to wear a smoking apron.

64.   On August 21, 2020, Mr. Gallagher was transported by wheelchair to the designated smoking patio by an unidentified Activity Assistant, who was identified as employee "E10" on the Pennsylvania Department of Health and Human Services Survey, dated August 25, 2020.

65.   The unidentified Activity Assistant ("E10") improperly, negligently and recklessly left the smoking patio and left Mr. Gallagher alone and unsupervised while he was smoking.

66.   The unidentified Activity Assistant ("E10") failed to provide Mr. Gallagher his smoking apron and/or a flameless lighter during this relevant time and event.

67.   While alone, unsupervised and without any smoking apron or flameless lighter, Mr. Gallagher attempted to light a cigarette by himself with a match when he dropped the match onto his clothing and caught on fire.

68.   Mr. Gallagher was unable to safely remove the match or put out/extinguish the match, and his clothes caught fire and he began yelling for help.

69.   Mr. Gallagher, with his clothes on fire and while on fire, re-entered the building yelling for help.

70.   Mr. Gallagher was heard screaming and calling for help while he remained on fire and continuing to burn.

71.   Two unidentified Certified Nurse Assistances and a Unit Manager responded to the resident lounge on the first floor where they found Mr. Gallagher sitting on a small table inside the lounge near the door leading out to the smoking area with flames coming from his clothes and body.

72.   The staff were required to put the flames out using their clothing and a fire extinguisher.

73.   The Unit Manager pulled the fire alarm and call 911. The paramedics responded and transported Mr. Gallagher to the hospital burn unit.

74.   Mr. Gallagher sustained burns to his shoulders, arms, chest, neck, hands, face and head.

75.   The unidentified Activity Assistant ("E10") failed to provide Mr. Gallagher with the required and necessary smoking apron and/or a flameless lighter.

76.   The unidentified Activity Assistant ("E10") left Mr. Gallagher alone and unsupervised while he was smoking on the patio.

77.   A second unidentified Activity Assistant, who was identified as employee "E5" on the Pennsylvania Department of Health and Human Services Survey, dated August 25, 2020, was an employee who regularly transferred Mr. Gallagher to the smoking patio. Unidentified Activity Assistant "E5" confirmed Mr. Gallagher required a smoking apron, which was hanging on the back of her second-floor office door on a hook.

78.   Unidentified Activity Assistant "E5" also confirmed all smoking materials were supposed to be kept in a locked box kept behind the first-floor nurse station.

79.   Defendants' staff was required to provide Mr. Gallagher only one (1) cigarette at a time, and Defendants' staff was also required to light the cigarette for Mr. Gallagher and/or wait while Mr. Gallagher lit the cigarette himself in order to take any and all matches from him for Mr. Gallagher's safety.

80.   As a result of this event, Mr. Gallagher suffered 15% total body surface with partial thickness (second degree) burns to the left anterior (front) and posterior (back) arm as well as the

left flank (side of body) and left-sided face and posterior head. Mr. Gallagher was admitted to the burn unit for wound care and monitoring.

81. Defendants conducted, maintained and have video surveillance of this patio and the relevant events that took place.

82. Mr. Gallagher was transferred to Crozer Chester Medical Center where he was treated for his burns and where he remained until he died.

83. As a direct and proximate result of the Defendants' acts and/or omissions, and its breach of duty of care, Mr. Gallagher suffered permanent and serious injuries to his body, skin, muscles, tendons, tissues, bones, etc., which required the following medical care and treatment, and included, *inter alia*,

a. traumatic burns
b. burns to the left flank, upper torso, arm, chest, neck, back, face and head
c. partial thickness burns to 15% of his total body surface area
d. multiple split thickness skin grafts
e. operative tracheostomy
f. insertion of a percutaneous endoscopic gastrotomy tube
g. insertion of a peripherally inserted central catheter ("PICC")
h. excision and debridement of left upper extremity, torso and neck
i. bronchoscopy
j. tunneled dialysis catheter placement
k. shock
l. wound infection
m. ventilator dependent respiratory failure
n. pneumonia
o. renal failure
p. acute kidney injury
q. anemia
r. atrial fibrillation
s. hypophosphatemia
t. fevers
u. leukocytosis
v. excision split thickness skin grafting *torso* plus ReCell plus VAC 845 cm 2, excision split thickness skin graft
w. excision split thickness skin grafting *neck* plus VAC plus ReCell 169 cm 2
x. excision split thickness skin grafting *face plus left ear* plus ReCell plus VA 130 cm 2

y.    severe permanent physical injuries resulting in pain, suffering and disfigurement

z.    mental anguish and humiliation

aa.    loss of capacity for enjoyment of life

bb.    expense of otherwise unnecessary hospitalization(s)

cc.    aggravation of pre-existing medical conditions

dd.    death

84.    On October 21, 2020, Mr. Gallagher died as a result of Defendants' negligence.

85.    The Certificate of Death states Mr. Gallagher's "immediate cause" of death was complications of thermal body burns.

86.    The Certificate of Death states the "manner of death" was "accident."

87.    The Certificate of Death states the "place of injury" was "outside nursing home."

88.    The Certificate of Death states the "location of injury" was "500 [sic] S. Wycombe Avenue, Yeadon, PA 19050."

89.    At the time of his death, Mr. Gallagher was eighty (80) years old.

90.    Mr. Gallagher suffered preventable and avoidable burns and injuries as a result of Defendants' negligence, which caused and/or increased the risk of serious and permanent injuries and death.

91.    Defendants' negligent conduct was a factual cause of Mr. Gallagher's serious and permanent injuries and death, and/or Defendants' negligent conduct increased the risk that Mr. Gallagher would suffer serious and permanent burns, injuries and death.

92.    The Pennsylvania Department of Health and Human Services conducted an Inspection and Survey, dated August 25, 2020, and determined that Defendants were in violation of several Federal and State Long-Term Nursing Home Regulations, and therefore issued citation(s) deficiencies against Defendants for these events.

## **CONDUCT OF DEFENDANTS**

93.    Plaintiff incorporates the prior paragraphs herein.

94. During the course of his residency, Mr. Gallagher was incapable of independently providing for all of his daily care and personal needs without reliable assistance.

95. At all relevant times, the Defendants, through their agents, servants, employees and/or representatives: (a) should have been and/or were aware of Mr. Gallagher's needs and (b) represented that they could adequately care for his needs.

96. In exchange for money, Mr. Gallagher was admitted to Defendants' care at the Facility to obtain such care and protection.

97. The Defendants, upon information and belief, combined to form a vertically integrated corporation that was controlled by the same board of directors, who were responsible for the operation, planning, management and quality control of the Facility.

98. At all relevant times, the Defendants, individually, and/or through their ostensible agents, agents, servants and employees, assessed the needs of Mr. Gallagher and promised that they would adequately care for his needs, akin to a hospital.

99. Defendants are/were responsible for the operation, planning, management and quality control of the Facility.

100. The control exercised over the Facility by the Defendants, included budgeting, marketing, human resource management, training, staffing and the creation and implementation of all policy and procedure manuals used by the Facility.

101. Defendants also controlled reimbursement, quality care assessment and compliance, licensure, certification, and all financial, tax and accounting issues through control of the fiscal policies of the Facility.

102.    Upon information and belief, the corporate officers of the Defendants utilized survey results and quality indicators to monitor the care being provided at their nursing homes, including the Facility.

103.    Defendants exercised the ultimate authority over all budgets and had final approval over the allocation of resources to their nursing homes, including the Facility.

104.    As part of their duties, the Defendants have an obligation to establish policies and procedures that address the needs of the residents of the Facility, including Mr. Gallagher, with respect to the recognition and/or treatment of medical conditions, such as those experienced by Mr. Gallagher, so as to ensure that timely and appropriate care will be provided for such conditions.

105.    Acting through their administrators, boards, committees and individuals, Defendants are responsible for the standard of professional practice by members of their staff at the Facility, and to oversee their conduct in the matters set forth herein.

106.    At all relevant times, the Defendants made a conscious decision to operate and/or manage the Facility to maximize profits at the expense of the care required to be provided to its residents, including Mr. Gallagher.

107.    In their efforts to maximize profits, Defendants reduced staffing levels below the level necessary to provide adequate care to residents, including Mr. Gallagher.

108.    Upon information and belief, the Defendants caused staffing levels at the Facility to be set at a level such that the personnel on duty at any given time could not reasonably tend to the needs of their assigned residents, including Mr. Gallagher.

109.    Upon information and belief, the Defendants have intentionally increased the number of sick and frail residents with greater health problems requiring more complex care.

110.    The Defendants knew that their increase in the acuity care levels of the resident population would substantially increase the need for staff, services and supplies necessary for the resident population.

111.    The Defendants failed to provide the resources necessary, including sufficient staff, services and supplies, to meets the needs of the residents, including Mr. Gallagher.

112.    The Defendants negligently, carelessly and recklessly caused the healthcare providers and nurses, who they placed and/or staffed at the Facility to be so unqualified, and/or under-trained, that the personnel on duty at any given time at the Facility could not reasonably tend to the needs of their assigned residents, including Mr. Gallagher.

113.    These aforementioned acts directly caused and/or increased the risk of the injuries and death of Mr. Gallagher and were known by Defendants.

114.    At all relevant times, the Facility was individually owned, and/or in concert owned, possessed, controlled, operated and maintained under the exclusive control of Defendants.

115.    At all relevant times, the Defendants were operating individually or through their agents, servants and employees who had actual, apparent and/or ostensible authority, and all of whom were acting within the course and scope of their employment and under the direct and exclusive control of the Defendants.

116.    The incidents aforementioned were caused solely and exclusively by reason of negligence, carelessness and recklessness of the Defendants, and their agents, servants and employees, and was due in no part to any act or omission to act on the part of Mr. Gallagher.

117.    The Defendants exercised complete and total control over the total and complete healthcare of all of the residents of the Facility, including Mr. Gallagher, akin to a hospital.

## COUNT ONE – PROFESSIONAL NEGLIGENCE

### PLAINTIFF v. ALL DEFENDANTS

118.    The prior paragraphs are incorporated herein.

119.    At all relevant times, Defendants were acting individually, and/or through their ostensible agents, agents, servants and employees, including but not limited to, the Nursing Home Administrator, the Director of Nursing, Juanita (Nurse), Johnathan Pappada, Andrea Monet (Activity Assistant), Two Certified Nurse Assistants and a Unit Manager who responded to Mr. Gallagher calling for help and who called 911, Activity Assistant Employee "E10," Activity Assistant Employee "E5," all of whom were in turn acting within the course and scope of their employment under the direct supervision and control of the Defendants.

120.    At all relevant times, Defendants had the ultimate responsibility of ensuring that the rights of the residents, including Mr. Gallagher, were protected.

121.    At all relevant times, Defendants owed a non-delegable duty to provide adequate and appropriate custodial care and supervision to Mr. Gallagher and other residents, such as a reasonable caregiver would provide under similar circumstances.

122.    At all relevant times, Defendants owed a non-delegable duty to Mr. Gallagher, and other residents, to hire, train and supervise employees so as to deliver healthcare and services to residents in a safe and reasonable manner.

123.    At all relevant times, Defendants, by and through their ostensible agents, agents, servants and employees, including but not limited to, the Nursing Home Administrator, the Director of Nursing, Juanita (Nurse), Johnathan Pappada, Andrea Monet (Activity Assistant), Two Certified Nurse Assistants and a Unit Manager who responded to Mr. Gallagher calling for help and who called 911, Activity Assistant Employee "E10," Activity Assistant Employee "E5," all of

whom owed a duty of care to Mr. Gallagher to exercise the appropriate skill and care of licensed physicians, nurses, certified nurse assistants, directors of nursing and nursing home administrators.

124. Upon information and belief, the administrator, director of nursing, medical director and/or other staff members of the Facility sent frequent written reports to the Defendants detailing the number and types of injuries, illnesses and infections sustained by the residents in the Facility, including those suffered by Mr. Gallagher.

125. Despite being made aware of the types and frequency of injuries, illnesses and/or infections, many of which were preventable, sustained by residents of the Facility, including those suffered by Mr. Gallagher, the Defendants failed to take steps to prevent said injuries, illnesses and/or infections from taking place.

126. The Defendants, as the corporate owners, board members and/or managers of the Facility, breached their duty and obligations to Mr. Gallagher.

127. The corporate conduct of the Defendants, which was independent of the negligent conduct of the employees of the Facility, disregarded the residents' health and well-being, including the health and well-being of Mr. Gallagher.

128. The Defendants, individually, and acting by and through its ostensible agents, agents, servants and employees, including but not limited to, the Nursing Home Administrator, the Director of Nursing, Juanita (Nurse), Johnathan Pappada, Andrea Monet (Activity Assistant), Two Certified Nurse Assistants and a Unit Manager who responded to Mr. Gallagher calling for help and who called 911, Activity Assistant Employee "E10," Activity Assistant Employee "E5," all of whom, were negligent, careless and reckless and breached the duties set forth in the preceding paragraphs, as follows:

a. failure to prevent an avoidable and preventable fire and/or accident resulting in Mr. Gallagher catching on fire and suffering burns, injuries and death

b. failure of staff to properly and safely dispense Mr. Gallagher's cigarette, light the cigarette of Mr. Gallagher and stay with Mr. Gallagher until the cigarette was properly and safely extinguished in order to avoid a preventable fire and accident resulting in Mr. Gallagher catching on fire and suffering burns, injuries and death

c. failure to properly and timely provide necessary and required supervision to Mr. Gallagher while he was smoking on the patio resulting in Mr. Gallagher catching on fire and suffering burns, injuries and death

d. failure to properly and timely provide necessary and required safety interventions, including but not limited to, a smoking apron and flameless lighter, to prevent an avoidable fire resulting in Mr. Gallagher catching on fire and suffering burns, injuries and death

e. failure to provide a safe environment to prevent an avoidable accident and fire resulting in Mr. Gallagher catching on fire and suffering burns, injuries and death

f. failure to prepare, implement, revise, and amend fire safety procedures, protocols and policies to ensure the safety of residents smoking on the patio, including the failure to properly provide necessary and required supervision and interventions, including a smoking apron and flameless lighter, to prevent Mr. Gallagher catching on fire, suffering burns, injuries and death

g. failure of staff to properly and safely dispense Mr. Gallagher's cigarettes, light his cigarettes, and stay with him until his cigarettes were properly extinguished

h. failure to properly and timely provide supervision, including 1-on-1 supervision, while Mr. Gallagher smoked on the patio

i. failure to keep and maintain all cigarettes, lighters, matches and any other smoking materials at the nurse's station and in the nurse's possession for safety and prevention of fires

j.  failure to provide Mr. Gallagher his smoking apron and flameless lighter for his required and necessary protection from lighters and/or matches and/or embers of cigarettes

k.  failure to properly and timely follow policies and procedures for safety and fire prevention, fire safety and fire interventions

l.  failure to provide Mr. Gallagher a smoking apron and flameless lighter resulting in Mr. Gallagher catching on fire and suffering burns, injuries and death

m.  failure to properly and timely prepare/revise/amend and implement the Care Plan for safety and fire safety and fire interventions

n.  failure to properly and timely provide all necessary safety precautions and interventions to prevent avoidable and preventable fires

o.  failure to properly and timely provide and implement 1-on-1 supervision, 1-on-1 assistance, assistive devices and any other necessary and available safety interventions to prevent avoidable and preventable fires

p.  failure to properly and timely provide a fire apron, flameless lighter, and necessary supervision to Mr. Gallagher's body and/or wheelchair for safety and to prevent avoidable and preventable fires

q.  failure to ensure that adequate supervision and sufficient employees was/were provided to the smoking patio and Mr. Gallagher to prevent avoidable and preventable fires, accidents, injuries and death

r.  failure to properly and timely respond to Mr. Gallagher's fire in order to prevent burns and the seriousness of burns suffered by Mr. Gallagher

s.  providing an unsecure and unsupervised smoking patio creating an unsafe environment resulting in Mr. Gallagher suffering a preventable and avoidable fire and burns

t.  failure to properly and timely document care, safety risk assessment, safety interventions, and post-accident assessments

u.  failure to ensure the resident environment remains as free of accident hazards as possible

v.  failure to provide Mr. Gallagher with adequate supervision and assistance and assistive devices to prevent accidents and catching fire and suffering burns, injuries and death

w.  under-budgeting the Facility which resulted in the under-staffing of the Facility which resulted in the improper care and treatment provided to Mr. Gallagher which resulted in a fire, burns and injuries and death

x.  under-staffing the Facility which prevented the staff from being able to provide proper, necessary and timely safety interventions, prevention and prevent fires, burns, injuries and death

y.  failure to transfer Mr. Gallagher to a hospital in a timely and proper manner after catching fire, suffering burns and injuries

z.  failure to assess and administer ordered treatment in a timely and proper manner to prevent Mr. Gallagher from catching fire, suffering burns, injuries and death

a.  failure to hire appropriately trained staff to prevent avoidable accidents

bb.  failure to appropriately train staff members to prevent avoidable accidents

cc.  allowing and/or encouraging unskilled and untrained employees to care for Mr. Gallagher

dd.  failing to comply with regulations regarding skilled nursing facilities with regards to Mr. Gallagher's accident and safety

ee.  failure to maintain appropriate records and charts, including a failure to monitor, document and chart significant changes in the condition of Mr. Gallagher, and/or intentionally failing to document, and/or altering, destroying and/or re-writing records/charts

ff.     failure to properly and timely prepare a Resident Care Card for Mr. Gallagher's safety, and necessary safety interventions

gg.     failure to develop reasonable treatment and care plans and provide care for Mr. Gallagher in order to provide for his dignity and self-respect, including the prevention of fire accidents and the implementation of fire safety interventions

hh.     failure to investigate and/or recognize and remedy the problems occurring in connection with serious events and injuries suffered by Mr. Gallagher

ii.     failure to undertake and/or implement the instructions provided by Mr. Gallagher's physicians

jj.     failure to properly fund the Facility so as to create a budget for sufficient staff who could have provided adequate fire prevention and safety

kk.     failure to implement a budget that would allow the Facility to provide adequate staff and appropriate healthcare to Mr. Gallagher to prevent accidents and maintain safety

ll.     under-staffing and under-budgeting the Facility which resulted in Mr. Gallagher suffering accidents, catching fire, suffering burns, injuries and death

mm.     at the time of Mr. Gallagher's fire accident, burns, and injury, he was in the exclusive control of Defendants, unable to safety and securely light his cigarette, smoke, move, transfer, eat, cook, ambulate, bathe, and/or shower on his own without assistance to maintain his safety and, thus, his injuries could not have happened in the absence of Defendants' failure to provide the necessary safety and fire risk assessment, care and interventions to prevent avoidable and preventable accidents and injuries

nn.     failure to comply with 42 CFR part 483, Subpart B (Requirements for Long Term Care Facilities), including but not limited to, 483.12(a)(1)(Free from Abuse and Neglect)

oo.     failure to comply with 42 CFR part 483, Subpart B (Requirements for Long Term Care Facilities), including but not limited to, 483.25(d)(1)(2)(Free from Accident Hazard / Supervision / Devices)

pp.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 201.14(a)(Responsibility of Licensee)

qq.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 201.14(c)(d)(1)(Responsibility of Licensee)

rr.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 201.18(b)(1)(Management)

ss.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 201.18(b)(3)(e)(1)(Management)

tt.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 201.20(a)(Staff development)

uu.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 201.29(c)(Resident Rights)

vv.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 201.29(j)(Resident Rights)

ww.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 211.11(a)(d)(Resident Care Plan)

xx.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 211.12(c)(Nursing Services)

yy.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 211.12(d)(1)(Nursing Services)

zz.    failure to comply with 28 Pa. Code, Commonwealth of Pennsylvania Long Term Care Licensure Regulations, including but not limited to, 28 Pa Code 211.12(d)(5)(Nursing Services)

129.    Upon information and belief, the corporate officers of the Defendants were made aware of the governmental/state survey results of the Facility and Defendants still did not remedy the medical and nursing deficiencies raised in the surveys.

130.    As a direct and proximate result of the Defendants' acts and/or omissions, and its breach of duty of care, Mr. Gallagher suffered permanent and serious injuries to his body, skin, muscles, tendons, tissues, bones, etc., which required the following medical care and treatment, and included, *inter alia*,

a.    traumatic burns
b.    burns to the left flank, upper torso, arm, chest, neck, back, face and head
c.    partial thickness burns to 15% of his total body surface area
d.    multiple split thickness skin grafts
e.    operative tracheostomy
f.    insertion of a percutaneous endoscopic gastrotomy tube
g.    insertion of a peripherally inserted central catheter ("PICC")
h.    excision and debridement of left upper extremity, torso and neck
i.    bronchoscopy
j.    tunneled dialysis catheter placement
k.    shock
l.    wound infection
m.    ventilator dependent respiratory failure
n.    pneumonia
o.    renal failure
p.    acute kidney injury
q.    anemia
r.    atrial fibrillation
s.    hypophosphatemia
t.    fevers
u.    leukocytosis

v.  excision split thickness skin grafting *torso* plus ReCell plus VAC 845 cm 2, excision split thickness skin graft

w.  excision split thickness skin grafting *neck* plus VAC plus ReCell 169 cm 2

x.  excision split thickness skin grafting *face plus left ear* plus ReCell plus VA 130 cm 2

y.  severe permanent physical injuries resulting in pain, suffering and disfigurement

z.  mental anguish and humiliation

aa.  loss of capacity for enjoyment of life

bb.  expense of otherwise unnecessary hospitalization(s)

cc.  aggravation of pre-existing medical conditions

dd.  death

131.  In causing the aforementioned injuries, the Defendants knew, or should have known, that Mr. Gallagher would suffer such harm.

132.  As a result of the aforesaid negligent conduct of Defendants, Mr. Gallagher was caused to suffer and/or increased his risk of suffering a serious and permanent injury, pain and suffering, as well as, a loss of the enjoyment of the pleasures of life, including the ability to engage in his activities of daily living.

133.  As a further result of the aforesaid negligent conduct of Defendants, Mr. Gallagher has incurred past medical expenses for care and treatment, some of which may be recoverable because they were paid by funds for which Plaintiff may still seek recovery under the M-Care Act.

134.  The conduct of the Defendants was intentional, outrageous, willful, wanton and exhibited a reckless indifference to the health and well-being of Mr. Gallagher.

135.  The conduct of the Defendants was such that an award of punitive damages is justified.

**WHEREFORE**, Plaintiff demands judgment against Defendants in a sum in excess of Fifty-Thousand Dollars ($50,000.00), together with punitive damages, costs, expenses and damages for pre-judgment delay.

## COUNT TWO - CORPORATE NEGLIGENCE/LIABILITY

### PLAINTIFF v. ALL DEFENDANTS

136.    Plaintiff incorporates the prior paragraphs herein.

137.    Defendants were directly negligent in the following respects:

   a.    failure to use reasonable care in the maintenance of safe and adequate facilities and equipment

   b.    failure to select and retain only competent staff

   c.    failure to oversee and supervise all persons who practiced nursing and/or skilled healthcare in the Facility

   d.    failure to formulate, adopt and enforce adequate rules, procedures and policies to ensure quality healthcare

138.    Upon information and belief, the corporate officers of the Defendants were made aware of the governmental/state survey results of the Facility and Defendants still did not remedy the medical and nursing deficiencies raised in the surveys.

139.    As a direct and proximate result of the Defendants' acts and/or omissions, and its breach of duty of care, Mr. Gallagher suffered permanent and serious injuries to his body, skin, muscles, tendons, tissues, bones, etc., which required the following medical care and treatment, and included, *inter alia*,

   a.    traumatic burns
   b.    burns to the left flank, upper torso, arm, chest, neck, back, face and head
   c.    partial thickness burns to 15% of his total body surface area
   d.    multiple split thickness skin grafts
   e.    operative tracheostomy
   f.    insertion of a percutaneous endoscopic gastrotomy tube
   g.    insertion of a peripherally inserted central catheter ("PICC")
   h.    excision and debridement of left upper extremity, torso and neck
   i.    bronchoscopy
   j.    tunneled dialysis catheter placement
   k.    shock
   l.    wound infection
   m.    ventilator dependent respiratory failure

n.   pneumonia
o.   renal failure
p.   acute kidney injury
q.   anemia
r.   atrial fibrillation
s.   hypophosphatemia
t.   fevers
u.   leukocytosis
v.   excision split thickness skin grafting *torso* plus ReCell plus VAC 845 cm 2, excision split thickness skin graft
w.   excision split thickness skin grafting *neck* plus VAC plus ReCell 169 cm 2
x.   excision split thickness skin grafting *face plus left ear* plus ReCell plus VA 130 cm 2
y.   severe permanent physical injuries resulting in pain, suffering and disfigurement
z.   mental anguish and humiliation
aa.  loss of capacity for enjoyment of life
bb.  expense of otherwise unnecessary hospitalization(s)
cc.  aggravation of pre-existing medical conditions
dd.  death

140.   In causing the aforementioned injuries, the Defendants knew, or should have known, that Mr. Gallagher would suffer such harm.

141.   As a result of the aforesaid negligent conduct of Defendants, Mr. Gallagher was caused to suffer and/or increased his risk of suffering a serious and permanent injury, pain and suffering, as well as, a loss of the enjoyment of the pleasures of life, including the ability to engage in his activities of daily living.

142.   As a further result of the aforesaid negligent conduct of Defendants, Mr. Gallagher has incurred past medical expenses for care and treatment, some of which may be recoverable because they were paid by funds for which Plaintiff may still seek recovery under the M-Care Act.

143.   The conduct of the Defendants was intentional, outrageous, willful, wanton and exhibited a reckless indifference to the health and well-being of Mr. Gallagher.

144.   The conduct of the Defendants was such that an award of punitive damages is justified.

**WHEREFORE**, Plaintiff demands judgment against Defendants in a sum in excess of Fifty-Thousand Dollars ($50,000.00), together with punitive damages, costs, expenses and damages for pre-judgment delay.

## COUNT THREE - VICARIOUS LIABILITY

### PLAINTIFF v. ALL DEFENDANTS

145.    Plaintiff incorporates the prior paragraphs herein.

146.    Defendants' actions and omissions occurred through its ostensible agents, agents, servants and employees, including the nursing department, nursing home administrator, director of nursing, registered nurses, licensed practical nurses, certified nursing assistants, therapists, physical therapists, speech therapists, occupational therapists, Juanita (Nurse), Johnathan Pappada, Andrea Monet (Activity Assistant), Two Certified Nurse Assistants and a Unit Manager who responded to Mr. Gallagher calling for help and who called 911, Activity Assistant Employee "E10," Activity Assistant Employee "E5," all of whom negligently provided care to Mr. Gallagher with regard to safety resulting in fire, burns, injuries and death.

147.    Defendants' ostensible agents, agents, servants and employees, including the nursing department, nursing home administrator, director of nursing, registered nurses, licensed practical nurses, certified nursing assistants, therapists, physical therapists, speech therapists, occupational therapists, Juanita (Nurse), Johnathan Pappada, Andrea Monet (Activity Assistant), Two Certified Nurse Assistants and a Unit Manager who responded to Mr. Gallagher calling for help and who called 911, Activity Assistant Employee "E10," Activity Assistant Employee "E5," had the duty to prevent Mr. Gallagher from suffering avoidable and preventable accidents, fire, burns and injuries and death.

148. Defendants' ostensible agents, agents, servants and employees, including the nursing department, nursing home administrator, director of nursing, registered nurses, licensed practical nurses, certified nursing assistants, therapists, physical therapists, speech therapists, occupational therapists, Juanita (Nurse), Johnathan Pappada, Andrea Monet (Activity Assistant), Two Certified Nurse Assistants and a Unit Manager who responded to Mr. Gallagher calling for help and who called 911, Activity Assistant Employee "E10," Activity Assistant Employee "E5," had the duty to provide proper safety interventions, assessment, care, documentation and treatment in order to prevent Mr. Gallagher's avoidable and preventable accident, fire, burns, injuries and death.

149. The Defendants are vicariously liable for the acts, commissions, and omissions of its ostensible agents, agents, servants and/or employees, including the nursing department, nursing home administrator, director of nursing, registered nurses, licensed practical nurses, certified nursing assistants, therapists, physical therapists, speech therapists, occupational therapists, Juanita (Nurse), Johnathan Pappada, Andrea Monet (Activity Assistant), Two Certified Nurse Assistants and a Unit Manager who responded to Mr. Gallagher calling for help and who called 911, Activity Assistant Employee "E10," Activity Assistant Employee "E5," all of whom were acting within the course and scope of their employment, as fully as though they had performed the acts or omissions themselves.

150. Upon information and belief, the corporate officers of the Defendant Nursing Home were made aware of the governmental/state survey results of the Facility and Defendants still did not remedy the medical and nursing deficiencies raised in the surveys.

151. As a direct and proximate result of the Defendants' acts and/or omissions, and its breach of duty of care, Mr. Gallagher suffered permanent and serious injuries to his body, skin,

muscles, tendons, tissues, bones, etc., which required the following medical care and treatment, and included, *inter alia*,

a. traumatic burns
b. burns to the left flank, upper torso, arm, chest, neck, back, face and head
c. partial thickness burns to 15% of his total body surface area
d. multiple split thickness skin grafts
e. operative tracheostomy
f. insertion of a percutaneous endoscopic gastrotomy tube
g. insertion of a peripherally inserted central catheter ("PICC")
h. excision and debridement of left upper extremity, torso and neck
i. bronchoscopy
j. tunneled dialysis catheter placement
k. shock
l. wound infection
m. ventilator dependent respiratory failure
n. pneumonia
o. renal failure
p. acute kidney injury
q. anemia
r. atrial fibrillation
s. hypophosphatemia
t. fevers
u. leukocytosis
v. excision split thickness skin grafting *torso* plus ReCell plus VAC 845 cm 2, excision split thickness skin graft
w. excision split thickness skin grafting *neck* plus VAC plus ReCell 169 cm 2
x. excision split thickness skin grafting *face plus left ear* plus ReCell plus VA 130 cm 2
y. severe permanent physical injuries resulting in pain, suffering and disfigurement
z. mental anguish and humiliation
aa. loss of capacity for enjoyment of life
bb. expense of otherwise unnecessary hospitalization(s)
cc. aggravation of pre-existing medical conditions
dd. death

152. In causing the aforementioned injuries, the Defendants knew, or should have known, that Mr. Gallagher would suffer such harm.

153. As a result of the aforesaid negligent conduct of Defendants, Mr. Gallagher was caused to suffer and/or increased his risk of suffering a serious and permanent injury, pain and

suffering, as well as, a loss of the enjoyment of the pleasures of life, including the ability to engage in his activities of daily living.

154. As a further result of the aforesaid negligent conduct of Defendants, Mr. Gallagher has incurred past medical expenses for care and treatment, some of which may be recoverable because they were paid by funds for which Plaintiff may still seek recovery under the M-Care Act.

155. The conduct of the Defendants was intentional, outrageous, willful, wanton and exhibited a reckless indifference to the health and well-being of Mr. Gallagher.

156. The conduct of the Defendants was such that an award of punitive damages is justified.

**WHEREFORE**, Plaintiff demands judgment against Defendants in a sum in excess of Fifty-Thousand Dollars ($50,000.00), together with punitive damages, costs, expenses and damages for pre-judgment delay.

**COUNT FOUR - SURVIVAL ACTION**

**PLAINTIFF v. ALL DEFENDANTS**

157. Plaintiff incorporates the prior paragraphs herein.

158. Plaintiff brings this action on behalf of the Decedent's estate under and by virtue of the Pennsylvania Judiciary Act, 42 Pa.C.S. Section 8302, known as the Survival Statute, to recover all damages legally appropriate thereunder.

159. Plaintiff claims damages for the pain, suffering and inconvenience endured by Plaintiff's Decedent up to and including the time of his death, which was caused by the Defendants' breach of duties and obligations to Mr. Gallagher.

160. As a direct and proximate result of the Defendants' acts and/or omissions, and its breach of duty of care, Mr. Gallagher suffered permanent and serious injuries to his body, skin,

muscles, tendons, tissues, bones, etc., which required the following medical care and treatment, and included, *inter alia*,

a. traumatic burns
b. burns to the left flank, upper torso, arm, chest, neck, back, face and head
c. partial thickness burns to 15% of his total body surface area
d. multiple split thickness skin grafts
e. operative tracheostomy
f. insertion of a percutaneous endoscopic gastrotomy tube
g. insertion of a peripherally inserted central catheter ("PICC")
h. excision and debridement of left upper extremity, torso and neck
i. bronchoscopy
j. tunneled dialysis catheter placement
k. shock
l. wound infection
m. ventilator dependent respiratory failure
n. pneumonia
o. renal failure
p. acute kidney injury
q. anemia
r. atrial fibrillation
s. hypophosphatemia
t. fevers
u. leukocytosis
v. excision split thickness skin grafting *torso* plus ReCell plus VAC 845 cm 2, excision split thickness skin graft
w. excision split thickness skin grafting *neck* plus VAC plus ReCell 169 cm 2
x. excision split thickness skin grafting *face plus left ear* plus ReCell plus VA 130 cm 2
y. severe permanent physical injuries resulting in pain, suffering and disfigurement
z. mental anguish and humiliation
aa. loss of capacity for enjoyment of life
bb. expense of otherwise unnecessary hospitalization(s)
cc. aggravation of pre-existing medical conditions
dd. death

161. Plaintiff claims damages for the fright and mental suffering attributable to the peril leading to the death of Plaintiff's Decedent, which was caused by the Defendants' breach of duties and obligations to Mr. Gallagher.

162. In causing the aforementioned injuries, the Defendants knew, or should have known, that Mr. Gallagher would suffer such harm.

163. As a result of the aforesaid negligent conduct of Defendants, Mr. Gallagher was caused to suffer and/or increased his risk of suffering a serious and permanent injury, pain and suffering, as well as, a loss of the enjoyment of the pleasures of life, including the ability to engage in his activities of daily living.

164. As a further result of the aforesaid negligent conduct of Defendants, Mr. Gallagher has incurred past medical expenses for care and treatment, some of which may be recoverable because they were paid by funds for which Plaintiff may still seek recovery under the M-Care Act.

**WHEREFORE**, Plaintiff demands judgment against Defendants in a sum in excess of Fifty-Thousand Dollars ($50,000.00), together with punitive damages, costs, expenses and damages for pre-judgment delay.

## COUNT FIVE - WRONGFUL DEATH

## PLAINTIFF v. ALL DEFENDANTS

165. Plaintiff incorporates the prior paragraphs herein.

166. As a result of the conduct of Defendants, its ostensible agents, agents, servants, and/or employees, Plaintiff's Decedent died on October 21, 2020.

167. Plaintiff's Decedent did not bring any action during his lifetime, nor has any other action been commenced on behalf of the Deceased against the Defendants herein.

168. Plaintiff brings this action on behalf of the Decedent's estate under and by virtue of the Pennsylvania Judiciary Act, 42 Pa.C.S. Section 8301, known as the Wrongful Death Statute, to recover all damages legally appropriate thereunder.

169. Plaintiff claims damages for the pecuniary loss suffered by the Decedent's survivors by reason of the death of Mr. Gallagher, deceased, as well as, for the reimbursement of hospital, nursing, medical and funeral expenses, and the expenses of administration necessitated

by reason of Mr. Gallagher's injuries which caused his death, and other expenses incurred in connection therewith.

170.    As a result of the death of Mr. Gallagher, the survivors have been deprived of the companionship, comfort, aid, assistance, society, tutelage and maintenance that they would have received from Decedent for the remainder of his natural life.

171.    In causing the aforementioned injuries, the Defendants knew, or should have known, that Mr. Gallagher would suffer such harm.

172.    As a result of the aforesaid negligent conduct of Defendants, Mr. Gallagher was caused to suffer and/or increased his risk of suffering a serious and permanent injury, pain and suffering, as well as, a loss of the enjoyment of the pleasures of life, including the ability to engage in his activities of daily living.

173.    As a further result of the aforesaid negligent conduct of Defendants, Mr. Gallagher has incurred past medical expenses for care and treatment, some of which may be recoverable because they were paid by funds for which Plaintiff may still seek recovery under the M-Care Act.

**WHEREFORE**, Plaintiff demands judgment against Defendants in a sum in excess of Fifty-Thousand Dollars ($50,000.00), plus costs, expenses and damages for pre-judgment delay.

**DeNITTIS OSEFCHEN PRINCE, P.C.**

BY: _____

Charles J. Galvin, Esquire
Attorney for Plaintiff

DATE: May 5, 2021

## VERIFICATION

Plaintiff, Robert J. Riggio, Jr., Executor of the Estate of Thomas A. Gallagher, deceased, hereby states that he is the plaintiff in the foregoing action and that the averments in the foregoing Complaint are true and correct to the best of his knowledge, information and belief. The language of said averments is that of counsel and not of Plaintiff. Plaintiff has read the Complaint and to the extent that it is based upon information which he has given his counsel, it is true and correct to the best of his knowledge, information and belief. To the extent that the language of the Complaint is that of counsel, Plaintiff has relied upon counsel in making this verification.

This statement is made subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.

Robert J. Riggio, Jr., Executor of the Estate of
Thomas A. Gallagher, deceased

## CERTIFICATE OF SERVICE

I do hereby certify and attest that a true and correct copy of Plaintiff's Notice To Defend and Civil-Action Complaint was made on the _5_ day of _May_ , 2021 to the parties below by United States mail, postage pre-paid to the following:

Jacqueline M. Carolan, Esquire
Fox Rothschild
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
(Attorney for Defendants)


Charles J. Galvin

DATE: _May 5, 2021_

FILED
05-06-2021 01:33 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

# EXHIBIT B

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CIVIL ACTION AT LAW

ROBERT J. RIGGIO, JR., Executor of the
Estate of THOMAS A. GALLAGHER,
Deceased

                    Plaintiff

      v.

PROVIDENCE OPERATOR, LLC, et al.
                  Defendants

NO: CV-2021-004224

## PRAECIPE TO ENTER JUDGMENT AGAINST DEFENDANT, MARQUIS HEALTH SERVICES, LLC, IN THE AMOUNT OF $953,241.49

**TO THE OFFICE OF JUDICIAL RECORDS:**

Please enter Judgment in favor of Plaintiff, Robert J. Riggio, Jr., Executor of the Estate of

Thomas A. Gallagher, deceased, and against Defendant, **Marquis Health Services, LLC,** in the

amount of **$953,241.49,** pursuant to Court Order, dated December 14, 2022, attached hereto and

marked as Exhibit "A."

_____
By: Charles J. Galvin, Esquire
Identification Number: 80407
DeNittis Osefchen Prince, P.C.
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
 (856) 797-9951
Email: cgalvin@denittislaw.com
Attorney for Plaintiff

Date: ___1/4/2023_____

                                    DATE:

**NOW,** this _4th_ day of _January_, 2023, **JUDGEMENT IS ENTERED AS ABOVE.**
JUDGMENT ENTERED AS ABOVE

                        **BY:** _____
                         Civil Division – Clerk of Courts JUDICIAL SUPPORT

FILED
01-04-2023 02:42 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA